UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.

BICOASTAL PRODUCTIONS LLC,

      Plaintiff,

v.

ARTHUR BENSON,

      Defendant.

_____/

### COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

Plaintiff Bicoastal Productions LLC ("BiCoastal") files this Complaint against Defendant Arthur Benson ("Benson"), for injunctive relief and damages, and alleges as follows:

### Nature of Action

1.     Through improper means, Benson—a former employee of BiCoastal, an entertainment booking agency—has misappropriated BiCoastal's trade secrets, including its customer database and confidential business information, engaged in deceptive and unfair trade practices, converted customer and other business data, breached his duty of loyalty, and tortiously interfered with BiCoastal's business relationships.

2.     Accordingly, BiCoastal seeks to have the Court enjoin Benson from using or disclosing BiCoastal's trade secrets and confidential business information, and to compel him to return or destroy such information. BiCoastal also seeks to recover its damages caused by Benson's tortious acts.

## Parties, Jurisdiction, and Venue

### Parties

3.  BiCoastal is a Florida limited liability company with its principal address at 122 Victoria Bay Court, Palm Beach Gardens, Florida 33418. BiCoastal's members, Ronald Gartner ("Gartner") and Fran Heller ("Heller"), are both domiciled in Palm Beach Gardens, Florida, and respectively serve as the Managing Director and Chief Operations and Marketing Officer for the company.  For diversity jurisdiction purposes, BiCoastal is a citizen of Florida. BiCoastal is an entertainment booking agency that books music and other performance artists to perform at BiCoastal's customers' venues, including performing arts centers, theaters, casinos, concert halls, fairs and music festivals, throughout North America and Europe.   When BiCoastal books an artist to perform at one of its customers' venues, it acts as a broker for the transaction, typically prepares the contract, and receives a commission out of the fee that the customer agrees to pay the artist for the event.

4.  Benson is domiciled at 2305 Tintern Road, Lebanon, Tennessee 37087 and, for diversity jurisdiction purposes, is a citizen of Tennessee. BiCoastal employed Benson as a Regional Agent from August 20, 2024, until December 3, 2025, when Benson confirmed that he was resigning from his employment at BiCoastal. For at least a month before Benson's December 3, 2025 resignation from BiCoastal, Benson had been secretly preparing to open his own entertainment booking agency. Since his departure from BiCoastal, Benson has been operating "Art Benson Entertainment," a direct competitor of BiCoastal.

5.  On or about November 4, 2025, Benson began emailing from his BiCoastal email account to his personal Gmail account (artgbenson@gmail.com) thousands of BiCoastal customers' names and point of contact email addresses, office phone numbers, wireless phone

numbers (including private numbers not obtainable except by permission of the BiCoastal customers), including customers' names that were within and outside of Benson's assigned western fourteen-state territory; booking offers from entertainment venues that Benson secretly "parked" while planning his departure; and contract templates that BiCoastal used with its customers and artists it represents.

### Jurisdiction

6.      This Court has federal question jurisdiction over this matter under 28 U.S.C. § 1331 because this civil action arises under the Defend Trade Secrets Act of 2016 (18 U.S.C. § 1836). This Court also has diversity jurisdiction over this matter under 28 U.S.C. § 1332 because this civil action is between citizens of different states, and the amount in controversy exceeds $75,000. Complete diversity exists because BiCoastal is a citizen of Florida (through its two members, Gartner and Heller, who are both citizens of Florida), and Benson is a citizen of Tennessee. In addition, this Court has supplemental jurisdiction over BiCoastal's claims arising under Florida law pursuant to 28 U.S.C. § 1367.

7.      Benson is subject to the personal jurisdiction of this Court pursuant to section 48.193(1)(a)2 and 6.a., Florida Statutes, because he committed tortious acts within Florida and caused injury to BiCoastal in Florida through his tortious acts committed within and outside of Florida, and by engaging in solicitation or service activities within Florida.

### Venue

8.      Venue is proper in this district pursuant to 28 U.S.C. 1391(b), because a substantial part of the events or omissions giving rise to BiCoastal's claims against Benson occurred in, and have caused damages to BiCoastal, in this district.

<u>**General Allegations**</u>

**BiCoastal Hires Benson as a Fulltime Regional Agent in August 2024**

9.      BiCoastal, an entertainment booking agency based in Palm Beach Gardens, Florida, employs various agents who work remotely from their homes, with BiCoastal assigning each agent a defined geographic territory. An agent's main job duty is to contact and communicate with BiCoastal's entertainment-venue customers in the agent's assigned geographic territory to book engagements for BiCoastal's artists to perform at its customers' venues.

10.      In or around the spring of 2024, BiCoastal was looking to hire a new talent agent to manage BiCoastal's fourteen-state western territory. A business contact of BiCoastal, Jim Della Croce ("Della Croce"), the owner of Pathfinder Management, which manages music artists, introduced Benson to BiCoastal.

11.      Shortly after Della Croce introduced Benson to BiCoastal, on May 13, 2024, BiCoastal offered Benson a talent agent position, and Benson began working for the company as a commission-based independent contractor.

12.      After Benson worked for BiCoastal as an independent contractor for approximately three months, on August 20, 2024, BiCoastal offered Benson full-time employment as a commission-based "Regional Agent," which BiCoastal communicated to Benson in the form of a written offer. The offer letter required Benson, in part, to covenant that he "agree[d] to devote [his] full business time, attention, and best efforts to the performance of [his] duties of BiCoastal Productions LLC." The offer letter also outlined various specific duties for Benson to perform, including but not limited to preparing contract paperwork and facilitating the execution of the contract by the customer and the artist; being "on call" on the days leading up to, and on the day of, the event; contacting the customer and artist for feedback after the event; and attending and

4

participating in weekly staff Zoom meetings and all required meetings with BiCoastal's management.

13.     Benson signed the offer letter on or about August 26, 2024, and began working for BiCoastal remotely as a Regional Agent from his home in Tennessee.

**Benson's Resignation from BiCoastal in December 2025**

14.     After working as a Regional Agent for BiCoastal for approximately fifteen months, on December 1, 2025, Benson emailed Gartner and Heller in Florida to say that he was resigning from his position at BiCoastal, effective January 1, 2026. The email states:

Ron & Fran,

I am writing to formally resign from my position at BiCoastal Productions, effective January 1, 2026. This was not an easy decision, as I have truly valued my time here and the opportunities I've had to grow both personally and professionally.

I am planning on starting my own business, and with 2026 being my 10th anniversary year as an agent I feel compelled to make a leap of faith. I want to express my sincere gratitude for the support, guidance, and trust you and the team have shown in me.

Working at BiCoastal has been a meaningful experience, and I am genuinely thankful for the relationships I've built and the skills I've developed along the way.

During my remaining time, I am fully committed to ensuring a smooth transition. I'm happy to help train my replacement, document processes, or assist in any way that would be helpful.

***This was a spur of the moment decision I made*** and wanted to make sure you had enough time before APAP to get affairs in order.

Thank you again for the opportunity to be part of the team. I hope to stay in touch, and I wish you and the company continued success in the future! I'm also happy to jump on any zoom calls in the future and continue booking Splish Splash! The Music of Bobby Darin if you are open to it.

Thank you very much for your valued business!

**Art Benson**

(emphasis added in bold italics).

15.     After Gartner and Heller received Benson's notice of resignation, they asked him by phone on or about December 1, 2025, to reconsider, including requesting that he work with BiCoastal through March 2026, the height of the artist booking season, and assist BiCoastal with the upcoming January 2026 APAP (Association for Performing Arts Professionals) conference and expo. Gartner and Heller offered Benson commission of 50% of his sales, which would be an increase from his 40% commission pay scale. As he stated in his written resignation notice, Benson again told Gartner and Heller that his "decision was all very spur of the moment, but [he] had to try it." During this conversation with Benson, Gartner and Heller also asked Benson if he had spoken to any artists about joining his new agency, including specifically two artists represented by BiCoastal for event bookings, i.e., The Lovin' Spoonful and the My Generation Tour, which were managed by Della Croce. Benson's response to Gartner and Heller's question was, "I don't believe in poaching artists." Gartner and Heller discovered shortly after this call, however, that for at least a month before his resignation, Benson had been plotting his departure and preparing to start his new agency.

16.     On December 2, 2025, Amber Hansen ("Hansen"), Benson's supervisor and the President of National Touring at BiCoastal, messaged Benson about his potential bookings. Benson, however, did not respond to Hansen. That same day, Heller also contacted Benson to find out if he was amenable to continuing his service as a BiCoastal employee, and Benson responded that he needed more time to decide. Heller gave him until the close of business on December 4, but said that she would appreciate a decision by December 3.

17.     Also on December 2, 2025, because Della Croce had originally introduced Benson to BiCoastal, Gartner and Heller contacted Della Croce to inform him that Benson had submitted his notice of resignation. Della Croce responded that he was completely "surprised," and agreed to try to convince Benson to stay on with BiCoastal through the first quarter of 2026.

18.     Further, on December 2, 2025, BiCoastal's President of Business Development Jack Forman ("Forman") reviewed Benson's scheduled meetings with BiCoastal's customers for the upcoming APAP conference. Despite Benson having been assigned on or about November 1, 2025, the task of setting up meetings with customers at the APAP conference, Benson had only set up one meeting. This sharply contrasted with the 20-25 meetings that Benson had set up by early December 2024 for the January 2025 APAP conference.

19.     On December 3, 2025, at 3:19 p.m. Eastern Time, Benson sent an email to Gartner and Heller stating he "want[s] to move forward with [his] original plan to pursue [his] own small business," that he's "ready to be the captain of [his] own ship," and that they "could consider this email as [his] official resignation."  On the same day, at 5:08 p.m., Benson left a voicemail for Forman, stating in part that he "just wants to take the high road and make sure everything is settled and right with you guys," and that he has "12 contracts in the queue" which contracts he wants to make sure are "looked after." On the same day at 5:26 p.m., Benson followed his voicemail with a text to Forman, stating in part that his resignation "wasn't an easy decision for [him]," and that he wants "to make sure all of the admin is clear with you guys as [he] still [has] a 13 – 15 show backlog of contracts to issue and want[s] to make sure you aren't in the hot seat on any of them."

20.     Also on December 3, 2025, Gartner received an email from Laurin Willis, a contact at the Beacon Theatre in Hopewell, Virgina, asking if Benson was still employed at BiCoastal. Mr. Willis said he was asking because Benson had emailed him from his personal Gmail account

(artgbenson@gmail.com) and was soliciting him to book a Bad Company legacy tribute band that he was representing. Gartner and Heller researched the band and saw that Della Croce was the band's manager, which raised questions as to whether Della Croce was collaborating with Benson for him to start his new agency that would compete with BiCoastal.

21.     On December 4, 2025, BiCoastal's prior attorney emailed to Benson a demand letter stating, in part, that Benson had appropriated private, proprietary, and confidential materials from BiCoastal by emailing these materials to Benson's personal Gmail account, alleged that while Benson was still employed with BiCoastal that he had been holding offers from BiCoastal's customers with the intention of diverting those offers to his soon-to-be-open competing agency, and threatened legal action against Benson absent a settlement.

22.     On December 5, 2025, the day after BiCoastal's prior attorney sent Benson the December 4 demand letter, Della Croce sent a letter to Gartner, Heller, and Forman, stating in relevant part that effective that same day, Della Croce's management company was "parting ways" with BiCoastal "for booking services with the following acts: The Lovin' Spoonful, The Hollies Greatest Hits starring Terry Sylvester, Tony Jackson, and The My Generation Tour [which included the first two acts plus Gary Lewis & The Playboys and Mitch Ryder]. Please refrain from pitching and advertising them going forward."

23.     Six weeks later, on January 21, 2026, a point of contact at Columbia Community College, a BiCoastal customer, notified Hansen that Benson had just called and left a voicemail stating that he had left BiCoastal, started a new agency, took The Lovin' Spoonful with him to his new agency, and wanted to follow up on the customer's interest in the potential booking. Benson also said in his voicemail to the customer that he knew that "a deal was under negotiation, and that [he] would like to get it confirmed for them."  Notably, Della Croce had already confirmed the

"deal" as a BiCoastal booking in a November 13, 2025 email he sent to Hansen, which followed with BiCoastal issuing its proposed booking contract to the customer for the event. Thus, Benson's voicemail that he left for the customer not only demonstrates his intentional interference with the "deal" under negotiation between BiCoastal's customer and BiCoastal to book The Lovin' Spoonful, but also suggests that Della Croce—who manages The Lovin' Spoonful and notified BiCoastal on December 5, 2025, that his company was "parting ways" with BiCoastal for any future bookings of The Lovin' Spoonful and his other managed artists—had been collaborating with Benson to interfere with BiCoastal's existing customer relationships.

### Benson's Plot to Misappropriate BiCoastal's Trade Secrets and Unfairly Compete with BiCoastal

24.     Between December 2 and December 3, 2025, BiCoastal first learned the depths of Benson's plot to misappropriate BiCoastal's trade secrets and unfairly and illegally compete with BiCoastal. This plot included, between November 4 and December 3, 2025, Benson regularly emailing from his BiCoastal email to his personal Gmail account thousands of BiCoastal customers' names and point of contact email addresses, office phone numbers, wireless phone numbers (including private numbers not obtainable except by permission of the BiCoastal customers), including customers' names that were within and outside of Benson's assigned western fourteen-state territory; booking offers from BiCoastal's customers that Benson secretly "parked" while planning his departure from BiCoastal; and contract templates that BiCoastal used with its customers and artists it represents.

25.     BiCoastal's investigation of Benson's wrongful conduct includes the following non-exhaustive list of Benson's wrongful acts, including the dates on which they occurred.

26.     On November 4, 2025, Benson sent four separate emails from his BiCoastal email to his personal Gmail account, containing thousands of customer identities and point of contact

email addresses, and office and wireless phone numbers, obtained from BiCoastal's password-protected customer database.

27.     On November 7, 2025, Benson sent three separate emails from his BiCoastal email to his personal Gmail account, including Benson's previous monthly sales reports and projections.

28.     On November 11, 2025, Benson sent three separate emails from his BiCoastal email to his personal Gmail account, containing W-9 forms, contract rider language, and promotional materials for the following artists represented by BiCoastal: The Lovin' Spoonful, Tony Jackson, Keith Anderson, the My Generation Tour and The Hollies' Greatest Hits. Notably, the Art Benson Entertainment website (registered on December 7, 2025) references Art Benson Entertainment as representing all the above artists. *See* www.artbensonentertainment.com/roster.

29.     On November 12, 2025, Benson sent an email from his BiCoastal email to his personal Gmail account, containing email addresses for dozens of casinos listed in the BiCoastal customer database, many of which were customers from states outside of Benson's western fourteen-state territory.

30.     On November 18, 2025, Benson sent a total of eleven emails from his BiCoastal email to his personal Gmail account, containing scores of customers' email addresses in the body of each email. Two of the emails included attachments that contained the MS Outlook customer contact card from BiCoastal's customer database as follows:

     a.   The email Benson sent at 11:45 a.m. contained sixty-five individual contact cards for customers located in Colorado, complete with confidential and proprietary notes describing BiCoastal's contact and conversational history with these customers.

     b.   The email Benson sent at 9:38 p.m. contained ninety-four individual contact cards for customers located in Georgia—which were outside of Benson's western

territory—complete with confidential and proprietary notes describing BiCoastal's contact and conversational history with these customers. In the body of this email, Benson pasted the email addresses of BiCoastal's customers from thirty-nine states and Canadian provinces, including states and provinces that were outside of Benson's assigned western territory.

31.     On November 18, 2025, Benson sent an email from his BiCoastal email to his personal Gmail account containing the 'Addendum A' from BiCoastal's customer booking contract template.

32.     Also on November 18, 2025, Benson sent an email from his BiCoastal email to his personal Gmail account, containing an offer for the artist Bad Company Legacy tribute band from Beaver Creek Resorts – a customer that Benson had done business with while employed at BiCoastal. Benson parked this offer for his new, competing agency when he intentionally failed to disclose the customer's offer to his supervisor, Hansen. Notably, Bad Company Legacy, managed by Della Croce, is now listed as a roster artist on the Art Benson Entertainment website. *See* www.artbensonentertainment.com/roster.

33.     On November 25, 2025, Benson sent an email from his BiCoastal email to his personal Gmail account, containing another parked offer to book Gary Lewis & The Playboys— another Della Croce managed artist—to perform at the Murray Theater in Utah. Gary Lewis & The Playboys are also listed as a roster artist on the Art Benson Entertainment website.

34.     On November 27, 2025, Benson sent an email from his BiCoastal email to his personal Gmail account, containing an offer for BiCoastal-represented artist Keith Anderson to perform at Beaver Creek Resorts. Benson also "parked" this offer, failing to disclose it to his supervisor, Hansen, and omitted it from any BiCoastal tracking reports.

35.     On December 1, 2025, Benson sent an email from his BiCoastal email to his personal Gmail account, containing his previous monthly booking reports. On the same day, Benson also re-sent the same email he sent on November 27, 2025, from his BiCoastal email to his personal Gmail account, containing the same offer for Keith Anderson to perform at Beaver Creek Resorts.

36.     As set forth below, Benson has misappropriated BiCoastal's trade secrets, engaged in deceptive and unfair trade practices, breached his duty of loyalty, converted BiCoastal's confidential business information, and tortiously interfered with its business relationships with its customers.

37.     All conditions precedent have been performed or have been waived.

### Count I
### Misappropriation of Trade Secrets in Violation of the
### Defend Trade Secrets Act of 2016 (18 U.S.C. § 1836)

38.     BiCoastal realleges and incorporates by reference the allegations in paragraphs 1 through 37 as if fully set forth herein.

39.     BiCoastal owns valid trade secrets in the following: BiCoastal's customer database, which includes BiCoastal's customers' identities, points of contact for its customers, points of contact email addresses, office phone numbers, wireless phone numbers (including private numbers not obtainable except by permission of the BiCoastal customers); booking history with the customers; pricing and payment history for customer bookings; customer contract representation terms; the communication history between BiCoastal and its customers; BiCoastal's booking offers from entertainment venues; and BiCoastal's contract templates used with its customers and artists it represents (collectively, "Trade Secrets").

40.     The Trade Secrets consist of financial, business, and economic information that derives independent economic value from not being generally known, or readily ascertainable, by others who could obtain economic value from its disclosure or use.

41.     The Trade Secrets are subject to reasonable measures that BiCoastal uses to maintain the secrecy and/or confidentiality of the Trade Secrets. This includes requiring confidential employee passwords for BiCoastal's employees to access BiCoastal's Microsoft 365/Outlook account, which is where BiCoastal's customer database is kept, using the Outlook "contacts" feature for each BiCoastal customer. In addition, such measures also include maintaining a password-protected cloud-based drive, i.e., Microsoft OneDrive, BiCoastal's booking offers from entertainment venues and its contract templates used with its customers and artists it represents.

42.     The Trade Secrets involve entertainment booking services that BiCoastal provides to customers throughout the United States and in Europe, Canada, and Mexico, which are used in, or intended for use in, interstate or foreign commerce.

43.     When Benson acquired the Trade Secrets, he knew or had reason to know that the knowledge of the Trade Secrets were derived from or through his improper means to acquire them, or that they were acquired under circumstances giving rise to a duty to maintain their secrecy or limit their use. Benson's improper means of acquiring, and his breach of duty to keep secret or limit use of, the Trade Secrets, includes Benson as of November 4, 2025, regularly emailing from his BiCoastal email to his personal Gmail account thousands of BiCoastal customers' names and point of contact email addresses, office phone numbers, wireless phone numbers (including private numbers not obtainable except by permission of the BiCoastal customers), including customers' names that were within and outside of Benson's assigned western fourteen-state territory; booking

13

offers from entertainment venues that Benson secretly "parked" while planning his departure from BiCoastal; and BiCoastal's contract templates used with its customers and artists it represents.

44.     Since Benson acquired the Trade Secrets, he has been unlawfully using and/or disclosing the Trade Secrets without BiCoastal's consent, including using them to directly compete with BiCoastal and solicit its customers to work with Benson's new agency, Art Benson Entertainment.

45.     By unlawfully acquiring, using and/or disclosing BiCoastal's Trade Secrets, Benson has misappropriated the Trade Secrets in violation of the Defendant Trade Secrets Act of 2016.

46.     As a direct and proximate result of Benson's misappropriation of the Trade Secrets, BiCoastal has incurred damages.

47.     Benson's misappropriation was willful and malicious, justifying the imposition of exemplary damages.

WHEREFORE, BiCoastal requests that the Court award it the following relief against Benson:

A.     The entry of a temporary and permanent injunction enjoining Benson, and anyone acting in concert with him, from disclosing or using, or otherwise making available to any other person or entity, any of BiCoastal's Trade Secrets or other confidential business information that is determined during discovery to be in the possession, custody or control of Benson;

B.     The entry of a temporary and permanent injunction enjoining Benson, and anyone acting in concert with him, to return or destroy all BiCoastal Trade Secrets and confidential business information that Benson has in his possession, custody or control in electronic or hard-copy form;

C.      The entry of judgment against Benson for any gains, profits, and unjust enrichment he has obtained from his misappropriation of the Trade Secrets;

D.      The entry of judgment against Benson for a reasonable royalty for his unauthorized disclosure or use of the Trade Secrets;

E.      The entry of judgment against Benson for exemplary damages not to exceed twice the award of other damages based upon Benson's willful and malicious misappropriation of the Trade Secrets;

F.      The entry of judgment against Benson for BiCoastal's attorneys' fees and costs based on Benson's willful and malicious misappropriation of the Trade Secrets; and

G.      The entry of judgment against Benson for any relief the Court deems just or equitable.

<u>**Count II**</u>
**Misappropriation of Trade Secrets in Violation of the**
**Uniform Trade Secrets Act (Ch. 688, Fla. Stat.)**

48.     BiCoastal realleges and incorporates by reference the allegations in paragraphs 1 through 37 as if fully set forth herein.

49.     BiCoastal owns valid Trade Secrets, as defined above.

50.     The Trade Secrets consist of financial, business, and economic information that derive independent economic value from not being generally known, or readily ascertainable, by others who could obtain economic value from its disclosure or use.

51.     The Trade Secrets are subject to reasonable measures that BiCoastal uses to maintain the secrecy and/or confidentiality of the Trade Secrets. This includes requiring confidential employee passwords for BiCoastal's employees to access BiCoastal's Microsoft 365/Outlook account, which is where BiCoastal's customer database is kept, using the Outlook

"contacts" feature for each BiCoastal customer. In addition, such measures also include maintaining a password-protected cloud-based drive, i.e., Microsoft OneDrive, BiCoastal's booking offers from entertainment venues, and BiCoastal's contract templates used with its customers and artists it represents.

52.     When Benson acquired the Trade Secrets, he knew or had reason to know that the knowledge of the Trade Secrets were derived from or through his improper means to acquire them, or that they were acquired under circumstances giving rise to a duty to maintain their secrecy or limit their use. Benson's improper means of acquiring, and his breach of duty to keep secret or limit use of, the Trade Secrets, includes Benson as of November 4, 2025, regularly emailing from his BiCoastal email to his personal Gmail account thousands of BiCoastal customers' names and point of contact email addresses, office phone numbers, wireless phone numbers (including private numbers not obtainable except by permission of the BiCoastal customers), including customers' names that were within and outside of Benson's assigned western fourteen-state territory; booking offers from entertainment venues that Benson secretly "parked" while planning his departure from BiCoastal; and BiCoastal's contract templates used with its customers and artists it represents.

53.     Since Benson acquired the Trade Secrets, he has been unlawfully using and/or disclosing the Trade Secrets without BiCoastal's consent, including using them to directly compete with BiCoastal and solicit its customers to work with Benson's new agency, Art Benson Entertainment.

54.     By unlawfully acquiring, using and/or disclosing BiCoastal's Trade Secrets, Benson has misappropriated the Trade Secrets in violation of the Uniform Trade Secrets Act of 2016.

55.     As a direct and proximate result of Benson's misappropriation of the Trade Secrets, BiCoastal has incurred damages.

56.     Benson's misappropriation was willful and malicious, justifying the imposition of exemplary damages.

WHEREFORE, BiCoastal requests that the Court award it the following relief against Benson:

A.     The entry of a temporary and permanent injunction enjoining Benson, and anyone acting in concert with him, from disclosing or using, or otherwise making available to any other person or entity, any of BiCoastal's Trade Secrets or other confidential business information that is determined during discovery to be in the possession, custody or control of Benson;

B.     The entry of a temporary and permanent injunction enjoining Benson, and anyone acting in concert with him, to return or destroy all BiCoastal's Trade Secrets and confidential business information that Benson has in his possession, custody or control in electronic or hard-copy form;

C.     The entry of judgment against Benson for any gains, profits, and unjust enrichment he has obtained from his misappropriation of the Trade Secrets;

D.     The entry of judgment against Benson for a reasonable royalty for his unauthorized disclosure or use of the Trade Secrets;

E.     The entry of judgment against Benson for exemplary damages not to exceed twice the award of other damages based upon Benson's willful and malicious misappropriation of the Trade Secrets;

F.     The entry of judgment against Benson for BiCoastal's attorneys' fees and costs based on Benson's willful and malicious misappropriation of the Trade Secrets; and

G.     The entry of judgment against Benson for any relief the Court deems just or equitable.

**Count III**
**Violation of Florida Deceptive and Unfair**
**Trade Practices Act (Ch. 501, Fla. Stat.)**

57.     BiCoastal realleges and incorporates by reference the allegations in paragraphs 1 through 37 as if fully set forth herein.

58.     Benson has engaged in unfair competition with respect to BiCoastal's Trade Secrets, as defined above.

59.     Benson knowingly engaged in deceptive and unfair trade practices when he acquired BiCoastal's Trade Secrets between November 4, 2025, and December 3, 2025, by regularly emailing them from his BiCoastal email account to his personal Gmail account including thousands of BiCoastal customers' names and point of contact email addresses, office phone numbers, wireless phone numbers (including private numbers not obtainable except by permission of the BiCoastal customers), including customers' names that were within and outside of Benson's assigned western fourteen-state territory; booking offers from entertainment venues that Benson secretly "parked" while planning his departure from BiCoastal; and contract templates that BiCoastal used with its customers and artists it represents.

60.     Benson also knowingly engaged in deceptive and unfair trade practices since he acquired the Trade Secrets by unlawfully using and/or disclosing the Trade Secrets without BiCoastal's consent, including using them to directly compete with BiCoastal and solicit its customers to begin working with Benson instead of BiCoastal.

61.     When Gartner and Heller encouraged Benson to remain employed with BiCoastal after Benson gave his initial notice of resignation on December 1, 2025, Benson also engaged in

deceptive and unfair trade practices when he misled Gartner and Heller that he would consider their offer for him to stay at BiCoastal, while he omitted to disclose that he had already acquired, used, and disclosed BiCoastal's Trade Secrets, that he had already begun working for his new agency Art Benson Entertainment, and that he had parked and not disclosed to Gartner and Heller offers to BiCoastal from entertainment venues that he would try to book through his new agency.

62.    In addition, on December 1, 2025, Benson knowingly misrepresented to Gartner and Heller that he "do[esn't] believe in poaching artists" when he was secretly plotting to do just that, i.e., "poach" from BiCoastal The Lovin' Spoonful, My Generation Tour, Tony Jackson and Keith Anderson, which he did successfully only days later.

63.    Benson's deceptive and unfair trade practices offend established public policy and are immoral, unethical, oppressive, unscrupulous, or substantially injurious to BiCoastal.

64.    Benson's deceptive and unfair trade practices have caused damages to BiCoastal.

WHEREFORE, BiCoastal requests that the Court award it the following relief against Benson:

A.    The entry of a temporary and permanent injunction enjoining Benson, and anyone acting in concert with him, from disclosing or using, or otherwise making available to any other person or entity, any of BiCoastal's Trade Secrets or other confidential business information that is determined during discovery to be in the possession, custody or control of Benson;

B.    The entry of a temporary and permanent injunction enjoining Benson, and anyone acting in concert with him, to return or destroy all BiCoastal Trade Secrets and confidential business information that Benson has in his possession, custody or control in electronic or hard-copy form;

C.    The entry of judgment against Benson for damages;

D.      The entry of judgment against Benson for BiCoastal's attorneys' fees and costs for prevailing on this claim against Benson; and

E.      The entry of judgment against Benson for any relief the Court deems just or equitable.

**Count IV**
**Breach of Duty of Loyalty**

65.      BiCoastal realleges and incorporates by reference the allegations in paragraphs 1 through 37 as if fully set forth herein.

66.      As an employee of BiCoastal, Benson owed BiCoastal a common law duty of loyalty.

67.      BiCoastal provided Benson with access to BiCoastal's confidential business information, including, but not limited to, the Trade Secrets, for the sole purpose of Benson being able to perform his duties as a Regional Broker for BiCoastal. BiCoastal provided Benson with access to this information by requiring him to use a password to access his BiCoastal Microsoft Outlook account and BiCoastal's Microsoft OneDrive account.

68.      Despite password restricted access to BiCoastal's confidential business information, including the Trade Secrets, Benson has used and/or disclosed this information for his own benefit and to the detriment of BiCoastal.

69.      Benson's unauthorized acquisition, use and/or disclosure of BiCoastal's confidential business, including the Trade Secrets, while still employed with BiCoastal, to divert BiCoastal's customers to Benson's new competing booking agency, Art Benson Entertainment, constitutes a breach of his duty of loyalty.

70.      As a result of Benson's breach of his duty of loyalty, BiCoastal has suffered damages.

71.     Benson's conduct constituting a breach of duty of loyalty was willful and malicious, including Benson's intent to cause harm or injury to BiCoastal, justifying the imposition of punitive damages against Benson.

WHEREFORE, BiCoastal requests that the Court award it the following relief against Benson:

A.      The entry of judgment against Benson for BiCoastal's suffered damages;

B.      The entry of a judgment against Benson for punitive damages based on his willful and malicious conduct, including his intent to cause harm or injury to BiCoastal; and

C.      The entry of a judgment awarding costs against Benson.

D.      The entry of judgment against Benson for any relief the Court deems just or equitable.

**Count V**
**Conversion**

72.     BiCoastal realleges and incorporates by reference the allegations in paragraphs 1 through 37 as if fully set forth herein.

73.     Benson has wrongfully and unlawfully converted BiCoastal's confidential business information and a Samsung laptop computer that BiCoastal issued to him on or about May 8, 2024.

74.     The confidential business information that Benson has taken, and is exercising dominion over, is specifically identifiable BiCoastal files and data, including: BiCoastal's customer database, containing thousands of BiCoastal customers' names and point of contact email addresses, office phone numbers, wireless phone numbers (including private numbers not obtainable except by permission of the BiCoastal customers), including customers' names that were within and outside of Benson's assigned western fourteen-state territory; booking offers from

entertainment venues that Benson secretly "parked" while planning his departure from BiCoastal; and BiCoastal's contract templates used with its customers and artists it represents.

75.     The Samsung laptop computer that Benson has converted is a Samsung Galaxy Book4 with model number NP750XGK-KS2US and serial number KY1P99YX2000MST ("Samsung Laptop").

76.     BiCoastal has an immediate right to possess the confidential business information and Samsung Laptop that Benson converted.

77.     BiCoastal has demanded return of its confidential business information and the Samsung Laptop, but to date Benson still possesses them and has not returned them.

78.     As a result of Benson's conversion of BiCoastal's confidential business information and Samsung Laptop, it is entitled to recover damages.

79.     Benson's conversion of BiCoastal's confidential business information and Samsung Laptop was willful and malicious, including Benson's intent to cause harm or injury to BiCoastal, justifying the imposition of punitive damages against Benson.

WHEREFORE, BiCoastal requests that the Court award it the following relief against Benson:

A.     The entry of judgment against Benson for BiCoastal's suffered damages;

B.     The entry of a judgment against Benson for punitive damages based on his willful and malicious conduct, including his intent to cause harm or injury to BiCoastal; and

C.     The entry of a judgment awarding costs against Benson.

D.     The entry of judgment against Benson for any relief the Court deems just or equitable.

## Count VI
## Tortious Interference with Advantageous Business Relationships

80.     BiCoastal realleges and incorporates by reference the allegations in paragraphs 1 through 37 as if fully set forth herein.

81.     BiCoastal has maintained advantageous business and contractual relationships with its customers contained in its customer database, which Benson wrongfully emailed from his BiCoastal email account to his personal email account between November 4, 2025, and December 3, 2025.

82.     Since wrongfully misappropriating BiCoastal's customer database, Benson has continued to contact and solicit BiCoastal's customers to use his new agency, Art Benson Entertainment, for booking their events, including certain BiCoastal customers who had pending booking offers from BiCoastal when Benson departed from BiCoastal on December 3, 2025.

83.     At all relevant times, Benson has known of the advantageous business relationships BiCoastal has with its customers, including the customers that Benson has solicited.

84.     Benson's solicitation and diversion of BiCoastal's customers to his new agency, using BiCoastal's wrongfully acquired customer database, continues intentional and unjustified interference with BiCoastal's advantageous business and/or contractual relationships with its customers.

85.     Benson's intentional and unjustified interference with BiCoastal's advantageous business and/or contractual relationships with its customers has caused damages to BiCoastal.

86.     Benson's tortious interference with BiCoastal's business relationships has been willful and malicious, including Benson's intent to cause harm or injury to BiCoastal, justifying the imposition of punitive damages against Benson.

WHEREFORE, BiCoastal requests that the Court award it the following relief against Benson:

A.      The entry of judgment against Benson for BiCoastal's suffered damages;

B.      The entry of a judgment against Benson for punitive damages based on his willful and malicious conduct, including his intent to cause harm or injury to BiCoastal; and

C.      The entry of a judgment awarding costs against Benson.

D.      The entry of judgment against Benson for any relief the Court deems just or equitable.

Dated:  January 28, 2026

RABIN KAMMERER JOHNSON
1601 Forum Place, Suite 201
West Palm Beach, FL 33401
561-659-7878
Attorneys for Plaintiff

s/ Adam T. Rabin
Adam T. Rabin
Fla. Bar No. 985635
arabin@rkjlawgroup.com
e-filing@rkjlawgroup.com
Christopher W. Kammerer
Fla. Bar No. 42862
ckammerer@rkjlawgroup.com